FILED'06 MAR 08 15:25USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOCELYN LUCIANO,                          )        Civil No. 05-348-JE
                                          )
                    Plaintiff,            )
                                          )        OPINION AND ORDER
          v.                              )
                                          )
AMERICAN GENERAL LIFE INSURANCE           )
COMPANY; and HOOPER HOLMES, INC.,         )
doing business as PORTAMEDIC,             )
                                          )
                    Defendants.           )
_____ )

        J. Randolph Pickett
        R. Brendan Dummigan
        Picket Dummigan Rhodes, LLP
        621 S.W. Morrison Street, Suite 900
        Portland, OR 97205

        Timothy W. Grabe
        Attorney at Law
        2722 N.E. 33rd Avenue
        Portland, OR 97212

            Attorneys for Plaintiff


        Adrienne C. Publicover
        Rebecca Labat Crosby
        Wilson Elser Moskowitz Edelman & Dicker, LLP
        525 Market Street, 17th Floor
        San Francisco, CA 94105-2725

OPINION AND ORDER - 1

Alec J. Shebiel
Garvey Schubert Barer
121 S.W. Morrison Street, 11th Floor
Portland, OR 97204-3141

David S. Mepham
Hoffman Hart & Wagner, LLP
1000 S.W. Broadway, 20th Floor
Portland, OR 97205

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

## INTRODUCTION

Plaintiff Jocelyn Luciano brought this negligence action against defendants American General Life Insurance ("AGI") and Hooper Holmes, Inc. ("Hooper Holmes"). Defendant AGI filed a motion for summary judgment on November 30, 2005.

After oral argument was heard on January 23, 2006, I issued a minute order granting defendant AGI's motion for summary judgment and informing the parties that I would issue a written opinion later.

Plaintiff's claims against defendant Hooper Holmes were tried to a jury on February 14, 15 and 16, 2006. At the conclusion of the trial, the jury returned a verdict in favor of defendant Hooper Holmes. Because the jury found that plaintiff had not established her negligence claim, it is technically unnecessary to issue a full written opinion. However, I do so in order to create a full record in case of review.

OPINION AND ORDER - 2

## FACTUAL BACKGROUND

In February 2003, plaintiff Jocelyn Luciano applied for an individual life insurance policy with defendant AGI. Defendant AGI assesses the risk of insuring individual applicants based on various factors, including the results of medical examinations or tests, such as blood analyses. Defendant AGI does not perform any paramedical testing procedures or blood draws in its regular course of business and does not employ any personnel who perform such services. Defendant AGI contracts with several outside paramedical vendors at any given time to complete paramedical testing and evaluation.  Plaintiff alleges that Ms. Rhoda Collier, a nurse working as an agent for defendant Hooper Holmes, one of AGI's vendors, injured her while performing a blood draw in February, 2003.

In March 2001, defendant Hooper Holmes submitted a bid proposal in defendant AGI's paramedical vendor selection process.  Defendant Hooper Holmes's responses in the bid proposal stated, in relevant part:

2.  State the average level of experience of your examiners.
> **The majority of our examiners have either nursing degrees or phlebotomy certificates.  Phlebotomists are assigned to cases involving blood specimen collections.**

3.  State the average education level of your examiners.
> **Education level varies by examiner skill level. Nurses have college level education, while phlebotomists may have vocational training.**

6.   Provide information about mandatory and voluntary training and development programs available to branch staff and examiners.

> **Examiners must complete the examiner training manuals and submit to a probationary training period before working on cases.  Employees are eligible to enroll in the Portamedic tuition reimbursement program where the company will reimburse up to fifty percent of costs for relevant courses and degrees.**

7.   Describe any ongoing training available to your staff.

> **We encourage our staff to enroll in customer service and insurance-related programs, including LMI. Systems training is ongoing as we continuously upgrade and expand our information technology services.**

Based on defendant Hooper Holmes's representations in its proposal regarding all aspects of its business, including personnel, quality assurance, compliance with clinical standards, and technology, defendant AGI approved defendant Hooper Holmes as a vendor.

On or about July 1, 2001, defendant AGI and defendant Hooper Holmes entered into a Master Services Agreement in which defendant Hooper Holmes agreed to provide certain paramedical and inspection report services, including blood draws, in connection with the underwriting of defendant AGI's insurance products.  At the time of plaintiff's blood draw, the Master Services Agreement between defendants was in effect.

OPINION AND ORDER - 4

The Master Services Agreement states, in relevant part:

**2.   Performance Criteria and Related Requirements.**
        **a.   Performance Standards.**  Vendor agrees that the
        Services provided pursuant to this Agreement will
        comply with the following standards and requirements
        ("Performance Standards").  In this regard, Vendor
        agrees that the Services shall:

> (I) be performed in a prompt, accurate,
> complete and professional manner, free of
> material errors, with a standard of care, skill
> and diligence consistent with generally
> accepted clinical standards, and the practices
> and procedures used in well-managed operations
> performing services comparable to the Services
> performed under this Agreement....

        **c.   Quality Assurance Procedures.**  In order to
        monitor its performance of Services, Vendor agrees
        to implement and utilize in connection with the
        services hereunder such quality assurance
        methodology and procedures as are acceptable
        to [AGI], including the provision to [AGI]. of
        management reporting outlining the performance of
        Services relative to volume, accuracy, timeliness
        and such other factors as agreed to in writing
        between the Parties.

        **d.   Feedback and Performance Review Meetings.**  [AGI]
        will provide on-going feedback representing Vendor's
        performance of the Services, including, without
        limitation, information relating to the volume,
        accuracy and timeliness of such Services...."

The Master Services Agreement also stated that the

parties were and would act as independent contractors, and

would not "give the appearance or impression of having any

legal authority to bind or commit [each other] in any way."

The Agreement added that defendant Hooper Holmes would

"control its own time and method of work" and that its

personnel would not "be deemed [as employees] of [AGI] for any

reason whatsoever."

OPINION AND ORDER - 5

From deposition testimony in the record, it appears that an applicant's insurance agent normally chooses the vendor who will undertake the medical evaluation and specimen collection, unless the applicant has prior experience with a particular vendor or specifically asks to make this choice.[1]  When defendant Hooper Holmes is chosen as the paramedical service provider, defendant AGI transmits an order to defendant Hooper Holmes for the type of paramedical evaluation to be performed. Defendant Hooper Holmes is then responsible for contacting the applicant, arranging the appointment and managing all of the technical details of the paramedical evaluation.  In the present case, plaintiff's insurance agent recommended that plaintiff apply for an AGI policy, and arranged for defendant Hooper Holmes to conduct the blood draw.

Defendant Hooper Holmes provides all of its phlebotomists with a copy of the "Portamedic Paramedical Examiners Specimen Collection Manual."  This text sets out the manner in which defendant Hooper Holmes expects its phlebotomists to perform the blood-drawing procedure.  Defendant Hooper Holmes provides its paramedical examiners with all of the equipment and supplies needed to perform the life insurance evaluations. Deposition testimony indicates that Portamedic does not "teach people how to draw blood."  Rather, it only engages the

---

[1]Plaintiff denies that this procedure was followed but has not cited evidence that this is not the normal procedure.

services of nurses and phlebotomists who have at least two years of blood-drawing experience.

At the time of plaintiff's blood draw Ms. Collier was under the direction of defendant Hooper Holmes.  Though Ms. Collier considers herself an independent contractor, her exact status is not an issue in this case because defendant Hooper Holmes has agreed that it is responsible for her conduct.  In 1983, Ms. Collier began performing life insurance exams on a part-time basis for Life Data Medical Services. This work included questioning an applicant's medical history, taking blood pressure, pulse, height and weight, occasionally drawing blood, and collecting urine samples.  Defendant Hooper Holmes purchased Life Data Medical Services in approximately 1993, and Ms. Collier has worked for defendant since that time.

In his declaration, Michael Tinsley, an employee of defendant AGI, states that "American General exercises no control over the manner in which Hooper Holmes conducts its business to provide paramedical and inspection report services, [and] blood draws..., including but not limited to the hiring and training of personnel and the practices and procedures used in Hooper Holmes' operations."[2]  Ms. Collier has never received any training, instruction, materials or other communication from defendant AGI.  When her deposition

---

[2]Plaintiff denies this statement but has produced no facts to substantiate the denial.

was taken, Ms. Collier testified that she identifies herself
to clients as a representative of Portamedic, and that she
stamps "Portamedic/Rhoda Collier" on applicant forms.  She
also testified that, when she performed plaintiff's evaluation
in February 2003, she identified herself to plaintiff as a
representative of Portamedic.

### STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes
summary judgment if no genuine issue exists regarding any
material fact and the moving party is entitled to judgment as
a matter of law.  The moving party must show the absence of an
issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.
317, 325 (1986).  The moving party may discharge this burden
by showing that there is an absence of evidence to support the
nonmoving party's case.  Id.  When the moving party shows the
absence of an issue of material fact, the nonmoving party must
go beyond the pleadings and show that there is a genuine issue
for trial.  Id. at 324.

The substantive law governing a claim or defense
determines whether a fact is material.  T.W. Elect. Serv.,
Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
Cir. 1987).  Reasonable doubts concerning the existence of a
factual issue should be resolved against the moving party.
Id. at 630-31.  The evidence of the nonmoving party is to be
believed, and all justifiable inferences are to be drawn in
OPINION AND ORDER - 8

the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant AGI contends that it is entitled to summary judgment for two reasons.  First, it argues that there is no evidence to support plaintiff Luciano's claim that defendant AGI breached a duty of care to plaintiff Luciano.  Second, defendant AGI asserts that, even if plaintiff Luciano proved that the applicable standard of care was breached by a third party, the undisputed material facts establish that it cannot be vicariously liable under the principles of *respondeat superior*.

I will address the latter of these contentions first.

## I.  Potential Respondeat Superior Liability

### A.  Actual Authority

*Respondeat superior* imposes liability on a defendant without regard to the defendant's fault.  <u>Kaiser Foundation Hospitals, Inc.</u>, 306 Or. 54, 57, 757 P.2d 1347 (1988).  In its most common form, *respondeat superior* renders an employer liable for torts committed by an employee acting within the course and scope of his or her employment.  <u>Chester v. Barmon</u>,

305 Or. 439, 753 P.2d 404 (1988).  However, *respondeat superior* liability may also render a defendant liable for the acts of its agents.  See, e.g., <u>Amfac Foods, Inc. v. International Systems & Controls Corp</u>., 294 Or. 94, 104, P.2d 1092 (1982).

The evidence in the record supports the conclusion that Ms. Collier was not defendant AGI's employee or actual agent. Ms. Collier was paid by defendant Hooper Holmes.  She received orders and schedules from defendant Hooper Holmes.   She presented herself to defendant AGI's potential clients as a representative of defendant Hooper Holmes, and not as a representative of defendant AGI.  Ms. Collier has never had any contact with defendant AGI.

The Master Services Agreement, which set out the rights and obligations of defendants AGI and Hooper Holmes, supports the conclusion that neither defendant Hooper Holmes nor Ms. Collier acted as defendant AGI's actual agent.  That agreement states, in relevant part:

> **"21.  Independent Contractor.**  The Parties will be and act as independent contractors, and under no circumstances will this Agreement be construed as one of partnership, joint venture or employment between the Parties.  Each Party agrees and acknowledges that it neither has nor will give the appearance or impression of having any legal authority to bind or commit the other Party in any way.  In keeping with this status, Vendor shall be free to control its own time and method of work, subject to its obligations to satisfy the Performance Standards applicable to the Services and to comply with its other requirements and obligations under this

Agreement.  No Vendor Personnel shall be deemed an employee of Customer for any reason whatsoever."

This provision clearly states that defendants AGI and Hooper Holmes were independent parties which agreed to operate as independent entities.  These parties explicitly agreed that they did not have and would not create the appearance of having legal authority to "bind or commit" each other in any way.  This provision also clearly states that defendant Hooper Holmes's personnel were not defendant AGI's employees.

There is no evidence in the record before the court supporting the conclusion that defendant AGI acted in a manner that was inconsistent with this Agreement or that defendant Hooper Holmes or Ms. Collier acted as AGI's agent or employee. In the absence of such evidence, plaintiff cannot establish that she was injured by anyone acting under the actual authority of AGI.

B.  Apparent Authority

Under the doctrine of *respondeat superior*, a defendant may also be liable for torts committed by one acting as the defendant's apparent agent.  The rule of apparent agency is summarized as follows in Restatement (2d) Agency §267 (1958):

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill

of the one appearing to be a servant or other agent
as if he were such.[3]

Apparent authority "can be created only by some conduct
of the principal that, when reasonably interpreted, causes a
third party to believe that the principal consents to have the
apparent agent act for him on that matter.  The third party
must also rely on that belief." Jones v. Nunley, 274 Or. 591,
595, 547 P.2d 616 (1976) (citation omitted).  Apparent
authority is an exception to the general rule that the torts
of independent contractors are not imputed to their
"employer." Jennison v. Providence St. Vincent Med. Center,
174 Or.App. 219, 229, 25 P.3d 358 (2001).

Apparent authority will support potential liability if
the following two conditions are satisfied: 1) the principal
represents, or "holds out" another as its agent; and 2) the
plaintiff actually relied on those representations.  Id. at
231-233.

Applying these principles to the present action, the
relevant questions are whether defendant AGI took steps that
would identify Ms. Collier as its agent, and whether a person

---

[3] Oregon courts have relied on section 267 of the
Restatement of Agency.  See, Themins v. Emanual Lutheran,
54 Or.App. 901, 637 P.2d 155 (1981), Shepard v. Sisters of
Providence in Oregon, 89 Or.App. 579, 750 P.2d 500 (1988).

in plaintiff's position could have reasonably concluded that Ms. Collier was defendant AGI's agent.

Based on a careful review of the record, I am satisfied that a reasonable trier of fact could only conclude that the requirements for finding apparent authority are not satisfied. In the provision of the Master Services Agreement noted above, defendant AGI explicitly required that defendant Hooper Holmes take no action that would give the appearance that it was defendant AGI's agent, and required that defendant Hooper Holmes agree that its personnel were not defendant AGI's employees. The record before the court supports only the conclusion that defendant AGI's own conduct was consistent with this provision, and that AGI itself did nothing to give the appearance that Ms. Collier was its agent. Defendant AGI did not tell plaintiff that it would arrange a blood draw or schedule the appointment with plaintiff. It did not indicate to plaintiff its nurse would perform the blood draw. Ms. Collier did not wear apparel indicating that she was an agent of AGI. Defendant AGI did not provide Ms. Collier with a vehicle or any logos or marks for her vehicle which might lead a reasonable person to believe Ms. Collier was an agent of the company.

AGI did not provide Ms. Collier with forms bearing its name or logo, and none of the blood-drawing instruments bore any symbol indicating association with defendant AGI. In

short, the record lacks any evidence that defendant AGI
represented to plaintiff that the phlebotomist performing her
blood draw was acting under its authority.

The second aspect of the apparent agency test assesses
the degree and reasonableness of plaintiff's reliance upon
defendant's actions.  Under the facts stated above, any
conclusion that plaintiff could have reached that Ms. Collier
was defendant AGI's agent would not have been reasonable.


## II.  **Potential Direct Liability**

For the reasons set out above, plaintiff cannot establish
that defendant AGI is vicariously liable for plaintiff's
injury, based on the principles of *respondeat superior*.  This
leaves the question whether it might be directly liable based
upon its own alleged negligence.

Analysis of this question must begin with reference to
Fazzolari v. Portland School Dist. No. 1J, 303 Or. 1, 734 P.2d
1326 (1987).  The Fazzolari court observed that "unless the
parties invoke a status, a relationship, or a particular
standard of conduct that creates, defines or limits the
defendant's duty, the issue of liability for harm actually
resulting from defendant's conduct properly depends on whether
that conduct unreasonably created a *foreseeable risk* to a
protected interest of the kind of harm that befell the
plaintiff." Fazzolari, 303 Or. at 17 (emphasis added).

OPINION AND ORDER - 14

Plaintiff has not shown that a "special relationship" existed between herself and defendant AGI that would impose on AGI a heightened duty of care to protect plaintiff from a negligent blood draw.  Therefore, in order to prevail on a negligence claim under principles of general foreseeability, plaintiff must establish that defendant AGI's conduct created a foreseeable risk of harm.  See Slogowski v. Lyness, 343 Or. 436, 441, 927 P.2d 587 (1996).

Plaintiff has not presented evidence from which a trier of fact could reasonably conclude that defendant AGI knew or should have known that its selection of defendant Hooper Holmes as one of the entities that performed blood draws on its applicants posed a foreseeable risk to someone in plaintiff's position.  Defendant AGI inquired into defendant Hooper Holmes' personnel, quality assurance standards, compliance with clinical standards, and technology before approving it as a vendor.  As noted in the factual background set out above, defendant Hooper Holmes informed defendant AGI that it used phlebotomists to collect blood samples, that most of its medical examiners had college level education, that it hired only examiners who had at least two years of experience drawing blood, and that its examiners were required to complete a probationary training period.

Nothing in Hooper Holmes's answers would have suggested that the personnel Hooper Holmes engaged to perform blood

draws were not experienced and competent.   In addition, there
is no evidence that defendant AGI knew or should have known
that defendant Hooper Holmes might employ the services of
negligent phlebotomists.  Under these circumstances, plaintiff
cannot establish that she was injured as a result of defendant
AGI's own alleged negligence in engaging the services of
defendant Hooper Holmes.


### CONCLUSION

Defendant's motion for summary judgment (#39) is granted.

DATED this 8th day of March, 2006.

_____
John Jelderks
U.S. Magistrate Judge